# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JAMES A. CORRIVEAU,
    Appellant,

   v.

DEPARTMENT OF THE NAVY,
    Agency.

DOCKET NUMBER
PH-1221-14-0377-W-1

DATE: September 4, 2015

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>James G. Noucas, Jr.</u>, Esquire, Portsmouth, New Hampshire, for the
 appellant.

<u>Debra M. Evans</u>, Esquire, Norfolk, Virginia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## REMAND ORDER

¶1  The appellant has filed a petition for review of the initial decision, which denied his request for corrective action. For the reasons discussed below, we GRANT the appellant's petition for review, vacate the initial decision, and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND the case to the regional office for further adjudication in accordance with this Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The appellant is a Pipefitter, WG-10, at the agency's Portsmouth Naval Shipyard, Naval Facilities Engineering Command (NAVFAC). Initial Appeal File (IAF), Tab 1 at 2. He filed this individual right of action (IRA) appeal asserting that the agency took personnel actions against him, or failed to take certain personnel actions, in retaliation for his whistleblowing. *Id.* On or about May 28, 2010, the appellant contacted the NAVFAC Headquarters Hotline and asserted that he and other employees in the Public Works Department believed they were experiencing "endless harassment" at the hands of their supervisors. IAF, Tab 49 at 17-19. Three days earlier, he and three of his colleagues signed a letter to U.S. Senators Susan Collins and Olympia Snowe alleging that they were denied "high pay";[2] received a letter of reprimand for using a government vehicle to drive to an on-site gym,[3] whereas other employees were not disciplined for similar conduct; were denied "fill-in time," i.e., the opportunity to serve as acting supervisors to gain experience; and were not selected for several positions at the shipyard. *Id.* at 33-36.

¶3 The agency held a June 15, 2010 meeting with the appellant and his colleagues who signed the letter. *Id.* at 42. The meeting was attended by all four signers, as well as C.M., a Labor Relations Specialist; R.G., Production Division Manager; and C.R., Chief Steward. *Id.*; *see* IAF, Tab 15 at 11-12; Hearing Compact Disc (HCD) (testimony of C.R.). On July 28, 2010, the appellant sent a follow up letter to Senator Collins stating that nothing had been resolved at the

---

[2] "High pay" is supplemental pay received for performing duties under hazardous conditions. IAF, Tab 49 at 33.

[3] IAF, Tab 49 at 241-43.

meeting because R.G., one of the subjects of the employees' complaint, had been in attendance.  IAF, Tab 49 at 46.

¶4  The appellant filed a complaint with the Office of Special Counsel (OSC) in mid-September 2010.  IAF, Tab 4 at 20.  He alleged that he:  (1) received a letter of reprimand for using a government vehicle to drive to an on-site gym, but had not first been warned against doing so, and that the letter would remain in his file for 2 years, even though he initially was told that it would remain there for 1 year; (2) was denied fill-in time; (3) was denied leadership training; (4) received an illegal performance appraisal from R.G. on August 2, 2010;[4] and (5) was told that R.G. stated on July 28, 2010, that the four June 15, 2010 meeting participants had "a bullseye on their backs," and that he intended to "get every one of them."  IAF, Tab 1, Exhibit 6; IAF, Tab 4 at 34, Tab 49 at 291-92.

¶5  OSC advised the appellant on November 30, 2010, that it had terminated its inquiry into his allegations and that he had the right to seek corrective action from the Board within 65 days after the date of the letter.  IAF, Tab 4 at 10.  He did not file a Board appeal at that time.  Instead, he filed a Board appeal challenging his nonselection for the position of Performance Assessment Representative.  *See Corriveau v. Department of the Navy*, MSPB Docket No. PH-3443-10-0542-I-1, Initial Decision (Sept. 27, 2010) (hereinafter *Corriveau I*) (located in IAF, Tab 4 at 11-15).  The administrative judge issued an initial decision dismissing the appeal on September 27, 2010, finding that the appellant failed to allege any basis for the Board's jurisdiction.  *Id*.  The appellant did not seek review and so the initial decision became the Board's final decision.

¶6  The appellant again contacted his elected representatives in September 2012.  He alleged he was passed over for selection for several positions for which he applied because he asked for an investigation of certain agency practices.  IAF, Tab 49 at 52-53.  He subsequently sent a similar letter by

---

[4] The appellant alleged that the appraisal was illegal because R.G., and not his immediate supervisor, completed it.  IAF, Tab 4 at 34; *see* IAF, Tab 49 at 201-06.

email to Congresswoman Chellie Pingree, and he also recontacted Senator Collins. *Id*. at 54-55.

¶7        The appellant filed a second complaint with OSC on March 21, 2013. IAF, Tab 1 at 4. Therein, he named R.G. and J.W., Head of the Public Works Department, as the responsible agency officials. *Id.* at 21. He included personnel actions alleged in his 2010 complaint and also asserted that he: (1) was denied training since February 2011; (2) applied for and was offered a Performance Assessment Representative position, but declined the position because it was temporary; and (3) was not selected for 16 positions between December 4, 2011, and December 20, 2012. *Id*. at 38-40, 101-29. In a September 16, 2013 letter responding to the complaint, OSC advised the appellant that it would "not revisit the allegations and personnel actions that . . . [were] already analyzed in connection with [his] prior complaint." *Id*. at 11. In its September 30, 2013 letter closing the file, OSC stated that the personnel actions included in the appellant's complaint were nonselections for several promotion positions,[5] denial of the opportunity to serve as an acting supervisor, and the agency's failure to pay him an on-the-spot award. *Id*. at 9. The appellant filed this appeal. IAF, Tab 1.

¶8        After a hearing, the administrative judge denied the appellant's request for corrective action. IAF, Tab 67, Initial Decision (ID) at 1, 16. She found that the Board's jurisdiction was limited to the issues raised for the first time in the 2013 OSC complaint because OSC declined to reconsider personnel actions that the appellant raised in the 2010 complaint. ID at 5-6; *see* IAF, Tab 47 at 3. She noted that the appellant failed to pursue his Board appeal rights for those matters after OSC's investigation ended. ID at 6; *see* IAF, Tab 47 at 3. She thus concluded that he failed to exhaust OSC procedures when he reasserted those

---

[5] OSC identified the following positions: Production Shop Planner, General Maintenance Supervisor, Production Control, Engineering Technician, Utilities Billing Analyst, Administrative Specialist, and Base Support Vehicles and Equipment Site Director. IAF, Tab 1 at 9.

matters in 2013. ID at 5-6. She likewise found that the nonselection that was the subject of *Corriveau I* was not properly before the Board, nor were any of the nonselections he had grieved through negotiated grievance procedures. ID at 6; *see* IAF, Tab 47 at 3. The administrative judge assumed for the sake of argument that each of the appellant's alleged whistleblowing disclosures met the legal definition of a protected disclosure.[6] ID at 8-9. She found that the agency produced credible evidence that the appellant was not eligible, or did not make the certificate of eligibles, for any of the positions for which he alleged he had not been selected in his 2013 complaint, with the exception of the Maintenance Supervisor position filled in August 2012. ID at 9.

¶9        Next, the administrative judge found, regarding the appellant's assertion that he was not offered fill-in time, that no employee from his work group had been granted that opportunity during the period in question. ID at 12. She also found that, because he had chosen to grieve an incident where he had been denied fill-in time, *see* IAF, Tab 4 at 8-9, the Board lacks jurisdiction over that matter, ID at 13; *see* 5 U.S.C. § 7121(g).[7] She determined that, although the appellant asserted in his 2010 OSC complaint that he was denied leadership training, he had not enrolled in such training even when it was offered. ID at 13; *see* IAF, Tab 4 at 34, Tab 49 at 291. As for the on-the-spot award, she found that he eventually received the disputed award *and* that the amount of the award had doubled during the delay. ID at 13-14. She further concluded that the appellant failed to show that his disclosures contributed to his nonselection or to R.G.'s failure to allow him fill-in time. ID at 14-15. Finally, the administrative judge found that the appellant did not show that R.G. had engaged in a pattern of harassing behavior,

---

[6] The administrative judge also found, however, that one of the alleged protected disclosures occurred after all of the alleged personnel actions took place, and thus could not have been a contributing factor for any of those actions. ID at 9.

[7] The administrative judge erroneously cited 5 U.S.C. § 7121(d), which pertains to complaints that agency personnel committed prohibited personnel practices encompassed under 5 U.S.C. § 2302(b)(1). ID at 6, 13.

as the appellant alleged. *Id.* The appellant filed the petition for review now before the Board. Petition for Review (PFR) File, Tab 1.

Applicable Law

¶10    The Board may review an IRA appeal brought under the Whistleblower Protection Act and the Whistleblower Protection Enhancement Act (WPEA) if the appellant satisfies the jurisdictional requirements for bringing such an appeal. *See* 5 U.S.C. §§ 1214(a)(3), 1221(a). The appellant must first prove that he has exhausted his administrative remedies before OSC and then allege nonfrivolously that: (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. § 1221(e)(1); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). If he establishes jurisdiction, the Board will consider his appeal on the merits and he will be required to prove the allegations by preponderant evidence.

¶11    If he meets his burden of proof, then the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure. 5 U.S.C. § 1221(e)(2). To consider properly whether the agency has met its burden of proof, the Board must carefully weigh *all* of the evidence, including the evidence brought by the appellant that would fairly detract from such a finding. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). The Board errs when it fails to "evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately" because such omissions leave the reviewing court too little basis upon which to decide whether substantial evidence exists to support the Board's judgment. *Id.* Here, we find that the administrative judge's analysis was insufficiently detailed to support appellate review.

Protected Disclosures and Personnel Actions

¶12     The list of protected disclosures and personnel actions before the Board was affected by the appellant's filing of an earlier complaint with OSC, a separate Board appeal, and his grievances brought through negotiated grievance procedures. Based on our review, it is difficult to ascertain from the initial decision the definitive list of the appellant's protected disclosures and the administrative judge's precise reasons for accepting or rejecting those disclosures. ID at 5-6, 9. The administrative judge also assumed for the sake of argument that the appellant's hotline complaint and letters to his elected representatives constituted protected disclosures. ID at 9. Additionally, she offered a full analysis for the August 2012 nonselection, but did not do so for the other claimed personnel actions. ID at 9-12.

¶13     On remand, the administrative judge thus must set forth the list of which personnel actions are properly before the Board, specifically identifying which actions are not being considered because they either were raised for the first time in the 2010 OSC complaint,[8] covered by the appellant's earlier Board appeal, or addressed through negotiated grievance procedures. *See* ID at 5-6; IAF, Tab 47 at 3-4. For each remaining personnel action, the administrative judge should make specific findings regarding whether the appellant established that the action falls within the meaning of 5 U.S.C. § 2302(a)(2)(A).

¶14     The WPEA requires that the administrative judge must address whether the appellant met his burden of proof before addressing whether the agency proved

---

[8] The administrative judge concluded that the appellant failed to exhaust OSC procedures when he reasserted, in his 2013 OSC complaint, matters already investigated as a result of his 2010 complaint. ID at 5-6; IAF, Tab 47 at 2-3. The administrative judge's conclusions were consistent with OSC's statement in its 2013 close out letter that it would "not revisit the allegations and personnel actions that . . . [were] already analyzed in connection with [his] prior complaint." IAF, Tab 1 at 11. To the extent that the appellant may have been seeking to file an IRA appeal based on his 2010 complaint, we would find such an appeal to be untimely filed. *See* 5 C.F.R. § 1209.5(a). The appellant also has not asserted that the doctrine of equitable tolling should apply in his case and so we have not applied it. *See* 5 C.F.R. § 1209.5(b).

by clear and convincing evidence that it would have taken the same personnel action(s) in the absence of the protected disclosure(s). *Belyakov v. Department of Health & Human Services*, 120 M.S.P.R. 326, ¶ 7 n.3 (2013); *see* 5 U.S.C. § 1221(e)(2). For each disclosure that the appellant identified, the administrative judge thus must make specific findings regarding whether he established that the disclosure falls within the meaning of 5 U.S.C. § 2302(b)(8). In making such findings, she must specify the date of each protected disclosure and personnel action and determine if and when the alleged retaliating official learned of the protected disclosure.

¶15      The administrative judge then must reexamine the contributing factor evidence for this appeal, applying a proper knowledge-timing test for each personnel action and protected disclosure at issue. *See* 5 U.S.C. § 1221(e)(1). Regarding the timing prong, the appellant admits that the delay of 2 years and 2 months between the June 15, 2010 meeting and the August 2012 nonselection is a lengthy one, but he contends that it is not excessively long given R.G.'s fairly obvious retaliatory animus, as illustrated by the "bullseye" comment. PFR File, Tab 1 at 18-19. He notes that R.G. was unrepentant about the remark during the hearing and that the administrative judge minimized his other evidence of retaliatory intent. *Id.* at 19-20. Although the administrative judge outlined in detail the testimony substantiating R.G.'s account of the August 2012 selection process, ID at 10-12, the delay between the June 2010 meeting and the selection process may not be an excessive one. The Board has found the knowledge-timing test to have been satisfied where the protected disclosures are between 1 and 2 years apart. *Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 16 (2011).

¶16      Regarding the August 2012 nonselection, the administrative judge should expressly consider whether the appellant established contributing factor under the "cat's paw" theory by establishing that the alleged retaliating official influenced others involved in the contested personnel actions. *See Aquino v. Department of*

*Homeland Security*, [121 M.S.P.R. 35](#), ¶ 19 (2014) (citing *Staub v. Proctor Hospital*, [562 U.S. 411](#), 415-16 (2011)).   The appellant asserts that R.G. and R.G.'s manager, J.W., the Head of the Public Works Department, controlled the August 2012 selection process and made the hiring decision.  PFR File, Tab 1 at 17.   The appellant asserts that R.G. had actual knowledge of his protected disclosures, including the knowledge he gained about those disclosures during the June 15, 2010 meeting.  *Id.*; *see* HCD (testimony of R.G.).   J.W., the appellant argues, also admitted to actual knowledge of the disclosures because he knew about the congressional inquiries resulting from the disclosures.  PFR File, Tab 1 at 17-18; *see* HCD (testimony of J.W.).   The appellant further argues that, even if J.W. lacked knowledge of his disclosures, R.G. controlled the selection process and influenced J.W.  PFR File, Tab 1 at 18.

¶17      For the personnel actions and protected disclosures that meet the contributing factor criterion, the administrative judge then must determine whether the agency showed by clear and convincing evidence that it would have taken the same personnel actions in the absence of the disclosures.   As the appellant asserts, the administrative judge declined to make these findings below.  PFR File, Tab 1 at 20-25.   The administrative judge should follow the guidance set forth in *Durr v. Department of Veterans Affairs*, [119 M.S.P.R. 195](#), ¶¶ 7-15 (2013), wherein the Board remanded the appeal after finding that the administrative judge did not fully address the appellant's evidence and arguments lending support to his claim that the agency failed to meet its burden of proof.

Credibility Findings

¶18      On review, the appellant also argues that the administrative judge failed to make appropriate credibility findings, especially regarding testimony pertaining to the agency's retaliatory motive.  If such findings had been made, he asserts, the initial decision would have been decided differently.[9]  PFR File, Tab 1 at 5.  The

---

[9] The appellant similarly contends that the testimony of D.L., the selectee for the position of Maintenance Supervisor, was largely false because of "misrepresentations"

administrative judge found it more likely than not that, in July 2010, R.G. exclaimed (in the presence of several witnesses) that the appellant and other employees who signed the letter addressed to Senators Snowe and Collins had "a bullseye on their backs." ID at 14. She also found, however, that this single statement was the appellant's *only* evidence that R.G. harbored any animus against him, and she concluded that the single comment did not establish a pattern of harassment or threat of retaliation. ID at 14-15. R.G. denied that he made the statement. HCD (testimony of R.G.). The administrative judge made no explicit credibility findings regarding R.G.'s testimony, but significantly relied upon that testimony when she found that the appellant failed to show that his disclosures contributed to the personnel actions enumerated in his complaint. ID at 9-10, 12-14. The appellant contends that none of R.G.'s testimony should be considered credible. PFR File, Tab 1 at 9-11.

¶19    The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so.[10] *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, the administrative judge did not address demeanor evidence in the initial decision. Although credibility determinations may be based *implicitly* upon demeanor evidence,[11] *see id.*; *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 4

he was alleged to have made on the résumé he submitted when he applied for that vacancy. PFR File, Tab 1 at 11-12. On remand, the administrative judge should address D.L.'s credibility and that of any other key witnesses.

[10] "Sufficiently sound" reasons include findings that are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004).

[11] We likewise acknowledge that a witness whose testimony is not credible for one matter may provide credible testimony for another matter. *Mitchell v. Department of the Air Force*, 91 M.S.P.R. 201, ¶ 10 (2002); *see Baldwin v. Department of Veterans Affairs*, 111 M.S.P.R. 586, ¶ 23 (2009) (self-serving testimony and documentary

(2009) (recognizing that, where an administrative judge has heard live testimony, her credibility determinations must be deemed to be at least implicitly based upon the demeanor of the witnesses), the administrative judge here cited *no* reason why she found R.G. to be a credible witness, *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). In that respect, we find that the initial decision is incomplete. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (holding that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

¶20    Additionally, we share the appellant's concern regarding the administrative judge's finding that the "bullseye" comment, standing alone, was insufficient to establish a pattern of harassment from which retaliatory animus could be inferred. PFR File, Tab 1 at 13-16; ID at 14-15. Contrary to the administrative judge's finding, an appellant need not establish a full-blown "pattern" of harassment to show retaliatory animus. *See* ID at 14-15. A single incident may have compelling evidentiary value. Here, the context surrounding the "bullseye" comment is especially troubling, considering the incendiary nature of the comment itself, R.G.'s emphatic denial of having made the statement during his hearing testimony, and the other witnesses' testimony controverting his denial. We further note that direct evidence of an agency official's retaliatory intent is *typically* unavailable because the official can simply deny having made any retaliatory comments or having any retaliatory motive. *See Whitmore*, 680 F.3d at 1372; *Herman v. Department of Justice*, 119 M.S.P.R. 642, ¶ 16 (2013). Consequently, we find the administrative judge's conclusion that the appellant failed to show any retaliatory motive to be overly dismissive and contrary to the Federal Circuit's guidance in *Whitmore* for reviewing such evidence. *See*

---

evidence is entitled to weight and must be evaluated for credibility in the same manner as all other testimony presented by the parties).

*Whitmore*, 680 F.3d at 1371-72 (remanding where the administrative judge failed to consider blatant evidence of retaliatory motive on the part of agency officials other than the proposing and deciding officials).

¶21     On remand, the administrative judge must reconsider the strength of the agency's motive to retaliate, examining the totality of the evidence presented in this appeal. The administrative judge should especially consider the appellant's arguments in which he identifies a series of acts that began shortly after his initial protected disclosure, including the letter of reprimand and the performance appraisal conducted by R.G. a few days after the "bullseye" comment. *See* PFR File, Tab 1 at 14-15. Should the administrative judge determine that the appellant's claims concerning these matters are true, for example, she should make findings as to whether R.G. ever personally evaluated other employees that he did not directly supervise who were not alleged whistleblowers.

¶22     Accordingly, we must vacate the initial decision and remand the appeal to the regional office. On remand, the administrative judge must make further findings regarding which personnel actions and protected disclosures are properly before the Board and fully address the appellant's arguments and evidence as to those matters. In addition, if applicable, the administrative judge shall analyze whether the agency proved by clear and convincing evidence that it would have taken the same personnel action(s) in the absence of the disclosure(s). Because the administrative judge held a hearing in the matter and correctly informed the parties of their respective burdens of proof beforehand, we deem the record complete. However, the administrative judge has the discretion to allow additional discovery and a supplemental hearing prior to issuing a new initial decision if she finds it necessary to do so for proper adjudication.

## ORDER

For the reasons discussed above, we REMAND this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                    _____
                                 William D. Spencer
                                 Clerk of the Board

Washington, D.C.